Case 2:25-cv-00644-BWA-KWR   Document 27   Filed 06/16/25   Page 1 of 12

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    Jun 16 2025

CAROL L. MICHEL
CLERK
cf                                    EDSS

UNITED STATES DISTRICT COURT          CV-25-00644

EASTERN DISTRICT OF LOUISIANA.

-----------------------------------------------------------x

Mr. Robert L. Dickerson, as Curator, on behalf of Mr. Brandon R. Dickerson,
An Adjudged Incapacitated Person,

                                  **Justice Barry W. Ashe**
             Plaintiff(s)          **Magistrate Judge Karen Wells Roby**

              -against-.

Queens Nassau Nursing Home Inc., d/b/a Queens Nassau Rehabilitation and
Nursing Center,
                 Defendant(s)

## OPPOSITION TO DEFENDANT'S MOTION

### PRELIMINARY STATEMENT

I respectfully request that this Court grant the pending Emergency Motion forthwith while this litigation is pending to prevent immediate and irreparable harm to my incapacitated son Brandon while these Court proceedings are pending.

My son is extremely vulnerable to the continued abuse of isolation from his family and community perpetrated by the Defendant(s) while the Defendant(s) continue to enrich themselves with litigation delay tactics.

Denying or delaying the removal of my son to a facility that is in his best interest to live free from isolation near his family and community while this litigation is still pending would be extremely prejudicial to Brandon and inhumane.

This Court has the jurisdictional authority to grant the Emergency Motion to remove Brandon to a facility in his best interest to prevent him from suffering irreparable harm.

1

I'm sure this Court can appreciate the frustration of watching a child you love whom you have raised from birth, witnessing him speaking his first words, watching him taking his first steps, encouraging him on his first day of school and celebrating with him on his last day of school. Then watching in real time all come crashing down because of a devastating illness taking away from him the most fundamental motor skills that a father witnessed his son acquire as he grew into manhood. These are the reasons why my litigation efforts are by no means frivolous. It is to fight for what is left of my son's life.

## THIS COURT HAS JURISDICTION PURSUANT TO THE "*EXCEPTION(S)*" OF YOUNGER

Despite the clear constitutional issues presented by Plaintiff's claims, Defendant(s) are attempting to invoke Younger to avoid this Court's obvious jurisdiction over this matter in an effort to terminate those claims.

Younger abstention, just as all prudential restraint doctrines, must bow to litigants' rights to an adequate opportunity to raise the deprivation of constitutional rights, the privilege to choose a more favorable forum, and the irreparable harm individuals may suffer from constitutional violations. Faithful application of this Court's jurisprudence would demonstrate that Younger abstention is not only inappropriate here, but, would in fact, violate the very interests the doctrine purports to serve.

The United States Supreme Court held:
***Thus, "where the danger of irreparable loss is both great and immediate[,]" Younger abstention does not apply. 401 U.S. at 45"***

***"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury….." Arevalo v. Hennessy, 882 F.3d 763, 766-67 (9th Cir. 2018)***

Here, it is beyond debate that the incapacitated Plaintiff would be irreparably injured and suffer irreparable loss by his inability to seek recourse for Defendant(s) violations of his ADA Title III

2

and IV rights. The Court cannot countenance the application of abstention to the detriment of Plaintiff's ADA rights.

In seeking a remedy for deprivations of Plaintiff's ADA rights under the Fourteenth Amendment, Plaintiff is entitled to a forum in federal Court.

*A "plaintiff's forum-selection privilege is axiomatic to the common-law tradition of party autonomy." Antony L. Ryan, Principles of Forum Selection, 103 W. VA. L. REV. 167, 168-69 (2000). Under this privilege, a plaintiff is "allowed to select whatever forum they consider most advantageous." Alt. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 63 (2013)*

This Court's abstention from this matter would allow the deprivation of the incapacitated Plaintiff's ADA rights to go unchecked, resulting in even greater harm and would also allow Defendant(s) to continue to enrich themselves off the back of the incapacitated Plaintiff through the extended years of Medicaid payments by continuing to detain and isolate him within their nursing home facility.

**EXCEPTIONS TO YOUNGER APPLY BECAUSE THE STATE COURT ACTION WAS COMMENCED IN "BAD FAITH", ABSENT OF JURISDICTION., PREJUDICIAL CONDUCT AND FAILURE TO EXERCISE JUDICIAL IMPARTIALITY**

On October 25th 2022, an Order and Judgment of Interdiction and appointment of a Curator for Brandon R. Dickerson, fully adjudicated with a final Judgment on the merits, in the state of Louisiana which acquired exclusive jurisdiction over the proceedings.

On December 20th 2022, a second duplicative petition was filed seeking the exact same relief already adjudicated in the state of Louisiana was commenced in New York state Court in "***Bad Faith***" in an attempt to circumvent the Louisiana Judgment of Interdiction.

**Documented Evidence is Presented to this Court of Prejudicial Conduct and Lack of Judicial Impartiality Existed in the New York Guardianship Court Proceedings**

I present to this Court a Court transcript of statements made by the New York Court Presiding Judge Bernice Siegal on the Motion to Dismiss the duplicative guardianship petition proceedings recorded on April 20th 2023. (Exhibit D1) displaying prejudicial conduct and lack the of **Judicial Impartiality.**

On page 21 of the 62- transcript lines 6-10**,** notwithstanding the Motion to Dismiss was enjoined by my daughter's attorney with his answer on March 21st 2023, (Exhibit E) questionable conduct was raised by Judge Siegal when she blatantly invites her Court appointed officials present at the hearing to write an "Opposition" to my already enjoined Motion to dismiss.  This was a complete lack of judicial impartiality and extremely prejudicial.

The Court appointed officials present at the April 20th 2023 hearing and directed to file an opposition were; Michael Benjamin Esq. Court Evaluator Linda Redlisky Esq Counsel to AIP and Abraham Mazloumi Esq. Temporary guardian.

In Judge Siegal's transcribed statements on page 14 of 62 she states she is not addressing the Motion to dismiss and that in her Court I am not the Court appointed guardian. Then on page 21of 62 lines 6-10 she contradicts herself by inviting Court appointed officials to write an opposition to the Motion to dismiss. Those statements are as follows: (Exhibit D1 Transcripts)

Page 14 of 63 The Court:     "_**Lets stop.  I'm not addressing the motion to dismiss. In this Court in this Court you are not the guardian of your son.**_"

      Mr. Dickerson:  "_**That's not what Judge Adams said**_".

      The Court:    "_**That's in Judge Adams Court.  And the motion to transfer that case has been put before Louisiana and its being transferred here but its up to Court to make decisions.**_"

Page 21 of 62 The Court:. "_**So I will be writing a decision, if anybody wants to write some opposition to the motion that has been made by Mr. Dickerson, pro se, to dismiss this action.  I would welcome that by next week and I will write a decision with respect to that**_".

On pages 32 of 62 and 33 of 62 of the Court transcripts it appears that Judge Siegal had advanced knowledge of a motion before the Louisiana Court to transfer the Interdiction proceeding to New York in contrast to the New York Appellate Court decision that no transfer proceeding existed.  Judge Siegal was an associate Judge in that Court.
That Louisiana Motion to transfer was ultimately DENIED.

In retaliation for Louisiana Court Judge Adams' June 1st 2023 decision denying the jurisdictional transfer of the Interdiction proceedings to the New York Courts and his Order removing my daughter Geneva as Undercurator for cause, Judge Siegal attempts to hold me in contempt of Court.  Notwithstanding Judge Siegal's knowledge of my daughter's removal as Undercurator for my son Brandon, she appoints her as his "Temporary Guardian".  (Exhibit D 8)

For these, reason the exception(s) to Younger apply.

## MOTION TO STRIKE / DISMISS

### DEFENDANT'S COUNSEL DELIBERATELY SABOTAGED HIS COURT FILLINGS TO ILLICIT ADDITIONAL TIME BEYOND THE COURT ORDERED RETURN DATE

I respectfully submit to this Court that Defendant's Motion must be stricken and or dismissed as untimely and in violation of Court Rules in filing documents under seal without first obtaining leave from the Court to do so, which has caused Defendant's documents filing to be untimely and prejudicing the Plaintiff

In an Order by Chief Justice Helen G. Berrigan of the U.S. District Court for the Eastern District of Louisiana, who sadly passed away November of last year, states the following regarding ***Procedures for filing Documents Under Seal:***

5

**ORDER**

**PROCEDURES FOR FILING DOCUMENTS UNDER SEAL IN CIVIL CASES**

The Court hereby adopts the following procedures for filing documents under seal.

(A) "*No document or other tangible item may be filed under seal in the record of any civil case of this court without an accompanying separate motion and order to seal as set forth herein, unless otherwise authorized by law*."

Defendant's counsel is an "officer of the Court". Defendant's counsel knew or should have known that their disingenuous tactics in filing a document under seal without an accompanying separate motion and Order to seal on the very last day of the return date of June 4th 2025, were procedurally prohibited by Order of this Court but, cleverly and strategically orchestrated by Defendant's counsel, knowing this action would trigger a rejection of those documents, giving Defendant(s) additional time to file their documents, thereby circumventing this Court's generous accommodations to the Defendant(s) for an extension to file their documents thereby subverting the very nature of the Emergency Motion, while simultaneously prejudicing Plaintiff with further delays .

For these reasons, this Court must deem the Defendant(s) filings untimely, striking and or dismissing their Motion.

**DEFENDANT'S COUNSEL STATEMENTS REGARDING AD HOC ATTORNEY ELAINE APPLEBERRY ARE UNEQUIVOCALLY FALSE**

Defendant's counsel has made unequivocal false statements regarding ad Hoc attorney Ms. Elaine Appleberry's role in this Matter and her knowledge of my son's whereabouts.

On page two of counsel's response, he states: "*On May 25, 2022, due to the competing interests of the petitioners, the court appointed Elaine Appleberry as Curator ad Hoc*."

6

First, Ms. Elaine Appleberry the Curator ad Hoc WAS NOT appointed due to "*competing interest*" but was appointed through operation of law pursuant to La. Code of Civil Procedure Article 4544(B) Appointment of Attorney for the Defendant Brandon R. Dickerson.

In all Interdiction proceedings in the state of Louisiana, all alleged interdict defendants are appointed counsel through operation of law to protect their interest until a Curator is appointed.

Nowhere in Ms. Appleberry's Note of Evidence or in the presiding Judge's June 1st 2023 Order (Doc 3 Ex) detailing his reasons denying a jurisdictional transfer and the removal of the Undercurator does it state that Ms. Appleberry was appointed due to "competing interest". Second, Defendant(s) counsel's statements on page two of his pleadings regarding the ad Hoc Curator Ms. Appleberry's knowledge of my son's location are astonishingly false.

On page two of counsel's response regarding Ms. Appleberry's awareness of my son's presence in Defendant's facility he states: "*It is interesting to note that on or about July 21, 2022, the Curator was not aware that Brandon had been moved by Robert to Defendant's Queens Nassau facility and filed a note of evidence into the record to this effect*"[2]

The Defendant's Counsel is attempting to mislead this Court by grossly misrepresenting and distorting Ms. Appleberry's statements and should be admonished for this blatantly false statement.

The fact is that I was in touch with the ad Hoc Curator less than one week of her appointment on June 2nd 2022 via telephone call from Ms. Appleberry as Ms. Appleberry actually herself stated on the record in paragraphs five (5) and six (6) of her *Note of Evidence* document regarding that phone call which was presented to this Court by the Defendant as Defendant's exhibit two (2).

The Note of Evidence document filed by Ms. Appleberry states in the June 2nd phone call: (Exhibit D2 Note of Evidence)

(Pargaph 5) "***On or about June 2nd 2022 the Curator "called" Mr. Robert Dickerson. (the defendant's father) to obtain information regarding the whereabouts of Brandon Dickerson.***

(Paragraph 6)  "***Mr. Dickerson informed the Curator that Brandon is currently an inpatient at the Queens Nassau Rehabilitation and Nursing Center,  located at 520 Beach 19th Street Queens NY 11691.*** How then can the Defendant's statement even remotely be true? These are the facts concerning my interactions with ad Hoc Curator Ms. Appleberry from the beginning of her appointment to the final judgment of Interdiction and my appointment as Curator:

On or about May 26th 2022 Ms. Appleberry was appointed Curator ad Hoc to represent the interest of Brandon R. Dickerson.
On or about June 2nd 2022 I was called by Ms..Elaine Appleberry to notify me of her appointment as ad Hoc Curator on behalf of my son Brandon. In that phone call Ms. Appleberry was informed that my son Brandon was temporarily in New York as in inpatient at the Defendant's facility known as the Queens Nassau Rehabilitative Nursing Center for continued therapeutic treatment which was initiated by the West Jefferson Medical Center Acute Rehabilitative Care Program in Louisiana.  She was also informed that the duration of the Queens Nassau program was expected to last for one year.

On or about June 13th 2022, my wife and I met with Ms. Appleberry at her law office located 405 Gretna Blvd. Ste 104 Gretna LA 70053 to discuss Brandon's progress his dependent child and his temporary transfer to New York State for continued therapeutic care.

On or about June 18th 2022 my wife and I again met with Ms. Appleberry at my son's domiciled residence located at 1013 Manhattan Blvd. Harvey LA to verify his residence and take inventory of his property.  Ms. Appleberry was also briefed on the care and custody of Brandon's dependent child who was residing with him at the time of his disability.  At this meeting plans were also discussed for of  Ms. Appleberry's visit to Defendant's rehabilitative facility in New York to assess the progress of Brandon's therapeutic treatment.

8

On or about June 25th 2022 Ms. Appleberry telephoned me to inform me that she will be arriving in New York immediately following the July 4th holiday to inspect the facility where Brandon was being treated for rehabilitative care and his progress.

On or about July 8th 2022 Ms. Appleberry texted me that she had arrived in New York and requested confirmation of the address of the facility where my son is being treated. (Exhibit B)

On or about July 21st 2022 Ms. Appleberry files the Note of Evidence at the 24th District Court Parish of Jefferson state of Louisiana.

On or about October 25th 2022 Ms. Appleberry's services as Curator ad Hoc is discontinued upon my appointment as Curator for my son Brandon.

It should also be noted that although the Defendant's lead social worker Kerry Kingland was notified in advance of Ms. Appleberry's pending arrival from Louisiana to assess my son's progress with his rehabilitative therapeutic care she was informed by an "unassigned social worker that Ms. Kingland had **"left for the day"**. (Paragraph 15 Note of Evidence)

**U.S. DISTRICT COURT EASTERN DISTRICT OF NEW YORK LITIGATION WAS NECESSARY**

Because the New York Court interfered with my authority as my son's Court Appointed Curator Violating my Due Process Rights and failed to exercise judicial impartiality, I exercised my Constitutional rights to hold the presiding Judge accountable because her actions prevented me from fulfilling my obligations to attend to the best interest of my son. The case was dismissed because of absolute judicial immunity.

**NEW YORK APPELLATE COURT'S DETERMINATION IS CATEGORICALLY INCORRECT**

Defendant's counsel presented to this Court a determination by the New York Appellate Court that is categorically incorrect.

The Court denied my petition to dismiss the duplicative guardianship petition for reasons contradicted by true facts.

9

1. The Court determined that I failed to register the Louisiana Interdiction Judgment when the true facts are that the Judgment was registered. "twice".  First on November 18th 2022 at the Queens County Supreme Court. Vacated by the Courts own Motion in its entirety citing "their own errors" on June 8th 2023.  Then re-registered on July 5th 2023 at the Suffolk County Supreme Court.  It is highly suspect that the Louisiana Judgment was vacated one week after the Motion to transfer the proceedings was denied June 1st 2023.

**(The November 18th 2022 Louisiana Interdiction Foreign Judgment filing and Queens County Vacated Order of that Judgment is filed under Doc. 20 Exhibits A and C)**

2. The Court determined that I failed to commence a hearing for transfer of jurisdiction when the true facts are that a hearing was indeed commenced to transfer the Interdiction proceedings in the state of Louisiana on May 3rd 2023 and DENIED on June 1st 2023
3. The Court determined that New York was my son Brandon's home state because of his presence in New York State when the true facts are that my son was present in New York state for medical treatment only with no intent to remain permanently and he was domiciled in the state of Louisiana for more than eight years immediately prior to his incapacitation also adjudged incapacitated persons cannot change their domicile.

Judge Adams in his June 1st 2023 decision denying a jurisdictional transfer he states:
*"Additionally, testimony was adduced that Brandon Dickerson was only moved to New York to obtain medical treatment; however, he did not have any intent to remain in New York permanently"*

It is apparent the New York Appellate Court has gone against its own precedent regarding an incapacitated person's admission into a healthcare facility in another state..

The New York Appellate Court **Second Department** has determined that a person's admission into a medical facility does not change his domicile: "[I]t is generally held that an incapacitated person's admission into a health-care facility does not cause a change of domicile if the incapacitated person is unable to express an intention to establish a new domicile." **Matter of Urdang, 194 AD2d 615, 616 (2d Dep't 1993); see also, Matter of Rottenberg, 19 Misc 2d 202, 203 [*4](Sur. Ct. NY Co. 1959).In** Ratkowsky v. Browne, 267 A.D. 643, 646 (3d Dep't 1944),

10

**The Third** *Department likewise held that a person who sold her New York apartment and moved to Connecticut solely for medical treatment still maintained a New York domicile. The law in New York is therefore well settled that "an adult that has been **adjudged an incapacitated retains the domicile which he had at the time he became incapacitated**," Matter of Webber, 187 Misc. 674, 676 (Sur. Ct. Kings Co. 1946), because such adult is incapable of a "voluntary change of domicile." Id. (citing Matter of Horton, 175 A.D. at 453).*

It should be noted that Judge Siegal was an associate Judge in the Appellate Court.

(See Ex. F Appellate Brief Ex. G Resp. Reply Brief  Ex. H. Appell Reply Brief)

## DEFENDANT FAILED TO PROPERLY SERVE PLAINTIFF WITH DOCUMENTS PURSUANT TO FRCP 5(b)

Defendant(s) submits a Certificate of Service stating "all parties were served via the Court's EM/ECF system.  However**,** Plaintiff is pro se and not registered with the Court's EC/ECF system. This is a fact counsel for Defendant(s) should have been fully aware of.  Defendant's Motion must be dismissed for improper service.

## CONCLUSION

There were three times in my life that I have sworn an oath.  First, to my God that I would love Him with all my heart and my neighbors as myself. Second, as a New York City Police Officer, that I would protect and serve the people of the state and city of New York. And third, to the state of Louisiana, that I will provide for the care and best interest of my son Brandon.

I believe that this Court is the only hope that my son has to rescue him from the chaotic legal nightmare the New York Courts have entrapped him in when he only came to New York for the treatment of his devastating illness.  He hasn't seen his only child now, going on four years and provisions must be made to re-unite them before his child, who was only 5 years old when my son came to New York for his medical treatment, loses all memory of her father.

WHEREFORE, I pray that this Honorable Court dismiss Defendant's Motion and grant the Emergency Motion in the substantial interest of Justice.

Respectfully submitted.
Dated Medford New York
June 13th 2025

By, *Mr. Robert L. Dickerson*

Mr. Robert L. Dickerson Curator on behalf of Plaintiff
29 Seymour La.
Medford New York 11763
347-530-5466
roblawdickerson@gmail.com

TO: grant.herrin@qpwblaw.com Attorney for Defendant