UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT L. DICKERSON, et al** | CIVIL ACTION |
| VERSUS | NO: 25-0644 |
| **QUEENS NASSAU NURSING HOME INC.,** d/b/a **QUEENS NASSAU REHABILITATION AND NURSING CENTER** | SECTION: "M" (4) |

**REPORT & RECOMMENDATIONS**

Pending before the Court is Defendant Queens Nassau Nursing Home Inc.'s **Motion to Dismiss (R. Doc. 26) and Amended Motion to Dismiss (R. Doc. 33).** This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73. R. Doc. 9.

**I.      Introduction**

   **A.  Factual Background**

This litigation arises from a family dispute regarding the medical care and guardianship of an incapacitated man. On March 10, 2022, Brandon R. Dickerson ("Brandon") suffered a brain aneurism at the age of thirty-one, which resulted in a severe traumatic brain injury that has left him incapacitated. See R. Doc. 20-1 at 49-50. Brandon was living with his four-year-old daughter in Harvey, Louisiana, at the time of this incident and initially received medical care at West Jefferson Medical Center, in Marrero, Louisiana. *Id*. Brandon was enrolled in an acute thirty (30) day rehabilitation program at West Jefferson Medical Center, and his doctors recommended that he be enrolled in a long-term rehabilitation program. R. Doc. 1 at 4.; *See* R. Doc. 20-1 at 46-48. According to his medical records from West Jefferson Medical Center, Brandon's family disagreed on where he should receive further medical treatment. R. Doc. 20-1 at 39.

This disagreement regarding Brandon's medical care resulted in a contentious legal battle for custodial rights. Brandon's sisters, Geneva Dickerson ("Geneva"), and Jennifer Herring ("Jennifer"), filed a petition of interdiction on his behalf in the 24th Judicial District Court for the State of Louisiana ("Louisiana Court") on March 22, 2022. *See* R. Doc. 26-2. Geneva sought to be appointed as Brandon's Curator, with Jennifer appointed as Undercurator. *Id.* Robert L. Dickerson ("Robert"), Brandon's father, intervened in the interdiction proceedings on April 15, 2022. R. Doc. 26-4 at 1. Due to the competing interests of the petitioners, the Louisiana Court appointed Elaine Appleberry ("Appleberry") as Brandon's Curator Ad Hoc on May 26, 2022. *See* R. Doc. 16-1 at 2.

On May 20, 2022, in the midst of the Louisiana interdiction proceedings, Brandon was flown directly from West Jefferson Medical Center to Defendant Queens Nassau Nursing Home Inc. ("Queens Nassau")'s facility in Queens, New York, for further treatment. R. Doc. 20-1 at 52-54. According to Brandon's medical records, Robert selected Queens Nassau to provide Brandon's treatment and joined him on the flight to their facility. *Id.* Robert contends that Brandon was only meant to undergo a one-year aggressive traumatic brain injury rehabilitation program with Queens Nassau, running from the date of his arrival on May 20, 2022. R. Doc. 1 at 3.

On October 25, 2022, the Louisiana Court issued a Judgement of Full Interdiction releasing Curator Elaine Appleberry, appointing Robert as Brandon's Curator, and appointing Geneva Dickerson ("Geneva") as Undercurator. R. Doc. 26-4. Geneva attempted to register the Louisiana Court's Judgement of Full Interdiction with the County Clerk for Queens County, New York, on November 18, 2022, but failed to follow New York's procedural requirements for registering a foreign interdiction. R. Doc. 20-1 at 17-25. Inexplicably, Geneva and Jennifer then filed an identical petition seeking custodial rights over Brandon in the Supreme Court of New York,

2

Queens County ("New York Court"), on December 14, 2022. R. Doc. 25-7 at 1. Therein, Geneva and Jennifer sought to be appointed co-guardians of Brandon, along with Brandon's mother. *Id.*

Geneva's choice to institute duplicative guardianship proceedings has resulted in extensive litigation in both Louisiana and New York. After Geneva and Jennifer initiated proceedings in the New York Court, Robert then petitioned the Louisiana Court to remove Geneva as Undercurator. R. Doc. 16-1 at 3. On June 1, 2023, the Louisiana Court found that it had continuing and exclusive jurisdiction over Brandon's guardianship proceedings and denied Geneva's request to transfer the proceedings to New York. R. Doc. 16-1. The Louisiana Court also found that Robert remains Brandon's lawful guardian and removed Geneva as Undercurator for knowingly filing duplicative guardianship proceedings in New York. *Id.*

However, the New York Court found that the Louisiana Court's Judgment of Interdiction was not properly registered in New York before the parallel guardianship proceedings began, and Robert's Curatorship was therefore not enforceable in New York. R. Doc. 25-5. The New York Court then appointed Joseph Ruotolo as Brandon's Guardian ad Litem on April 18, 2024. *Id.* The New York Court's decision was affirmed by the Appellate Division of the Supreme Court of New York on December 11, 2024. R. Doc. 25-7.

B. **Federal Lawsuit**

On April 4, 2025, Robert instituted this suit, as curator on behalf of his adult son Brandon, in this Court against Queens Nassau, the nursing home where Brandon still resides.[1] R. Doc. 1 at 1. He alleges that Queens Nassau held itself out to him and the public as a facility possessing the proper degree of skill and etiquette in regarding the rights of patients in their care pursuant to the

---

[1] Robert also filed another federal lawsuit in the Eastern District of New York alleging the same facts alleged herein. *See Dickerson v. Dickerson*, No. 23-cv-3859, 2023 WL 3931696 (E.D.N.Y. June 9, 2023). The case was dismissed on grounds that his requests are barred under the *Younger* Abstention Doctrine. *Id.* at *3.

3

American with Disability Act ("ADA"). R. Doc. 1 at 3. However, Robert alleges that Queens Nassau failed to comply with the ADA.[2]

Robert, as Brandon's curator, also seeks the release of his son from the nursing home to avoid irreparable harm to Brandon's mental and physical health. R. Doc. 3 at 4. Robert contends that Brandon was only supposed to be enrolled in a one-year aggressive traumatic brain injury program. *Id.* at 2. He contends that more than a year has passed, and therefore, his son should be released and returned home to Louisiana. *Id.*

He further claims that his son Brandon was deemed incapacitated by a Court in the State of Louisiana on October 25, 2022, and a Louisiana court appointed him as his son's curator. R. Doc. 1 at 1. Therefore, Robert claims that this Court is a proper venue because Louisiana is Plaintiff's Home State. R. Doc. 1 at 1, R. Doc. 1-1 at 2. Robert likewise seeks the termination of the ongoing New York state court temporary guardianship because the Louisiana curatorship order precedes it and should be recognized. R. Doc. 5, 8-9. Robert currently resides in New York. R. Doc. 1 at 7.

### C. Motion to Dismiss

Queens Nassau filed the subject motion seeking dismissal of the complaint with prejudice for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. R. Doc. 33 at 1. Queens Nassau particularly explains that this lawsuit is a request to have this Court adjudicate a purely state law matter where two states disagree with each other on the interpretation of their respective laws, which is the heart of the

---

[2] Robert claims that Queens Nassau has kept Brandon isolated from his family, and that their facility was not equipped to provide the promised treatment. R. Doc. 1 at 4. He therefore raises claims against Queens Nassau for fraudulent inducement and violation of Title III and IV of the Americans with Disabilities Act ("ADA"). *Id.* at 3-6.

*Younger Abstention Doctrine*. *Id.* at 7. Queens Nassau further contends that New York is the proper venue for this dispute, because all of the parties reside there. *Id*. 6-7.

Robert Dickerson opposes the motion and again requested that the court grant his emergency motion (R. Doc. 3) to prevent irreparable harm to his incapacitated son, Brandon. R. Doc. 27 at 1. Plaintiff also contends that the court has jurisdiction pursuant to the *Younger* exceptions. *Id*. at 2. According to Dickerson, *Younger* must bow to the litigant's rights to raise claims alleging a deprivation of constitutional rights. *Id.* Dickerson maintains that his incapacitated son would be irreparably injured if he is not permitted to seek recourse for the violations of his ADA Title III and IV rights. *Id.*

Dickerson additionally contends that Queens Nassau's Motion to Dismiss should be dismissed because its counsel violated this Court's procedures for filing documents under seal. R. Doc. 27 at 6. Dickerson then proceeds to argue the factual nature of the proceedings, his displeasure with the results of the proceedings in New York, and the details regarding the appointment of a curator ad hoc to represent his son's interest. *Id.* at 6-11. Dickerson lastly disputes that he was properly served because as a *pro se* litigant he is not registered in the Court's EC/ECF electronic filing system. *Id.*

II.     **Standard of Review**

      A. **Title 28 U.S. C. 1915(e)(2)**

Title 28 U.S. C. § 1915(e)(2) provides that if the allegations in a in forma pauperis complaint are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief, the Court shall dismiss the case at any time. 28 U.S.C. § 1915(e)(2). To survive the pleading stage, a civil complaint must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And to prevent "abusive or captious litigation," the IFP statute "authorizes federal courts to dismiss" any action that "is frivolous or malicious." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (cleaned up). Frivolous complaints are those that "lack [ ] an arguable basis either in law or in fact." *Id.* And a "complaint is malicious if it suggests an intent to vex defendants or abuse the judicial process by relitigating claims decided in prior cases." *Young Yil Jo v. Six Unknown Names Agents*, No. 1:06-cv-01714, 2006 WL 3483429, at *1 (E.D. Cal. Dec. 1, 2006).

### B. Fed. Rule 12(b)(1)

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). This prevents courts from prematurely dismissing a case with prejudice when they do not have the necessary jurisdiction. *Id.* Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998); *see also Tubesing v. United States*, 810 F.3d 330, 332 (5th Cir. 2016). The well-pled factual allegations of the complaint are construed as true and are viewed in the light most favorable to the plaintiff. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

The burden of proving subject matter jurisdiction lies with the party asserting jurisdiction, and it must be proved by a preponderance of the evidence. *See Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) ("The plaintiff must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence.") (citation omitted). To test whether the party asserting jurisdiction has met its burden, a court may rely on: "(1) the complaint

alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

### C. Fed. Rule 12 (b)(2)

The plaintiff must also make a "prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 95 (5th Cir. 1992) Where the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than conducting an evidentiary hearing or limited discovery, the plaintiff's burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Peters Broad Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 438 (6th Cir. 2022) The Court must find it has personal jurisdiction over a defendant before making any decision as to the merits. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007).

### D. Fed. Rule 12(b)(3)

"On a Rule 12(b)(3) motion to dismiss for improper venue, the court must [again] accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). In deciding such motions, the Court may examine all evidence in the record. *See* A*mbraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir.2009) (citations omitted).

When venue is challenged, district courts in the Fifth Circuit have been inconsistent in allocating the burden of proof. See *Uviado, LLC v. United States*, 755 F. Supp. 2d 767, 779 n.7

(S.D. Tex. 2010) (acknowledging the split in authority). Most courts in this District, however, hold that a plaintiff bears the burden of proof. *See, e.g., Summer v. Kenton, OH Policea*, No. 11–3162,2012 WL 1565363, at *4 (E.D. La. May 2, 2012); *Vaughn Med. Equip. Repair Serv., LLC v. Jordan Reses Supply Co.*, No. 10–00124, 2010 WL 3488244, at *4 (E.D. La. Aug.26, 2010); *Ross v. Digioia, Jr.*, No. 11–1827, 2012 WL 72703, at *2 (E.D. La. Jan. 10, 2012).

E. **Fed. Rule 12(b)(6)**

Lastly, under Rule 12(b)(6), the Court may dismiss a complaint if it fails to state a claim upon which any relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *See Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (citations and quotation marks omitted).

The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *Id.*

### III. Analysis

#### A. Federal Question Jurisdiction

In the present suit, Robert alleges that Queens Nassau Nursing Home, Inc. d/b/a Queens Nassau Rehabilitation and Nursing Center held itself out to possess the proper degree of skill and etiquette to adhere to the American with Disabilities Act. R. Doc. 1 at 3. However, Robert contends that Queens Nassau's treatment of his son Brandon has been cruel, inhumane, and constitutes a "pseudo prison" in violation of ADA Title III. *Id.* at 3-4. Robert additionally claims that Queens Nassau isolated Brandon from his friends and family. *Id.* Robert maintains this violates Title IV of the ADA, which provides for the disabled to have access to telecommunications devices. *Id.* at 6. Robert additionally alleges that Queens Nassau did not possess the proper equipment for his son's rehabilitation therapy. *Id.* at 5. Robert therefore seeks monetary damages as well as a request for the facility to release his son. R. Doc. 1 at 6 and R. Doc. 3.

The defendant does not address the issue of Brandon's medical status at its facility. Defendant solely seeks dismissal based on the *Younger* doctrine. *See* R. Doc. 33.

A case involves federal question jurisdiction if it is apparent from the plaintiff's well-pleaded complaint[3] that the cause of action arises under federal law or that the plaintiff's right to relief "depends upon the resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). "A mere 'suggestion' of a federal question is not sufficient." *Koll v. Wayzata State Bank*, 397 F.2d 124, 127 (8th Cir. 1968).

Here, Plaintiff brings his claim under Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail on a Title III claim, Plaintiff must prove: "(1) that [ ]he is disabled within the meaning of the ADA; (2) that defendant[ ] own[s], lease[s], or operate[s] a place of public accommodation; and (3) that defendant[ ] discriminated against h[im] by denying h[im] a full and equal opportunity to enjoy the services defendant[ ] provide[s]." *Rossman v. Dollar Gen. Corp.*, 368 F. Supp. 3d 422, 426 (N.D.N.Y. 2019) (quoting *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008)). While a plaintiff proceeding under Title III may seek injunctive and declaratory relief, "[m]onetary relief ... is not available to private individuals under Title III of the ADA." *Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see also* 42 U.S.C. § 12188(a).

---

[3] The well-pleaded complaint rule requires that a federal question appear on the face of the plaintiff's complaint. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Otherwise, the suit does not arise under federal law. See id. The rule is not satisfied if on the face of the complaint, the plaintiff merely raises an anticipated federal defense. *See id.* at 152.

The ADA defines "public accommodation" to include most "inn[s], hotel[s], motel[s], or other place[s] of lodging." See 42 U.S.C. § 12181(7)(A). However, "the term 'public accommodation' 'does not include residential facilities or apartment buildings.'" *Burke v. Verizon Commc'ns, Inc.*, No. 18-cv-4496, 2023 WL 2535165, at *16, 2023 U.S. Dist. LEXIS 44776 (S.D.N.Y. Mar. 16, 2023) (quoting *Mazzocchi v. Windsor Owners Corp.*, No. 11-cv-7913, 2012 WL 3288240, at *7, 2012 U.S. Dist. LEXIS 112479 (S.D.N.Y. Aug. 6, 2012)).

Lastly, a plaintiff must have standing to bring the lawsuit. A plaintiff "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). A plaintiff pursuing injunctive relief must also establish that he "is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation omitted). "[T]he central inquiry is not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022). In other words, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

A review of the complaint shows that Plaintiff has failed to meet his burden of establishing federal question jurisdiction. The well-pleaded part of Plaintiff's complaint alleges that Queens Nassau failed to possess the proper degree of skill and etiquette to regarding the rights of patients in their care pursuant to the Americans with Disabilities Act. R. Doc. 1 at 3. Plaintiff claims that Queens Nassau failed to perform the rehabilitative services for his son Brandon as promised in

violation of Title III of the ADA. *Id.* Plaintiff also claims that Queens Nassau has isolated his son from his family by denying him access to communication devices in violation of Title IV of the ADA. *Id.* at 3-6. Accordingly, the well-pleaded part of Plaintiff's allegations stem from medical malpractice and negligence claims. Such claims, however, only gives rise to a state-created remedy and not a federal action. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (noting that the Plaintiff failed to state a federal claim because the adequate remedies for negligence or medical malpractice actions arise under state law).

Plaintiff's mere reference to the ADA is insufficient to establish federal question jurisdiction. The Plaintiff must clearly set the basic facts necessary to support the conclusion that this Court has jurisdiction and has not done so. *See Fountain v. New Orleans Public Service, Inc.*, 265 F. Supp. 630, 632 (E.D. La. 1967); *Gilbeaux v. Univ. of Tex Med. Branch*, 42 F. Supp. 2d 637, 641 (E.D. Tex. 1998) (concluding that a mere citation to a federal statute is insufficient to involve federal question jurisdiction). Likewise, "[t]he ADA does not create a remedy for medical malpractice" and therefore, cannot be the basis of the present suit. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *see also Lee v. Martin & Plunkett, M.D., LLC*, No. 3:21-cv-68, 2021 WL 1566969, at *6 (N.D. Fla. Jan. 19, 2021); *Finn v. Haddock*, 459 F. App'x 833, 837-38 (11th Cir. 2012) (stating "failure to provide adequate medical treatment…does not violate the ADA."); *Vang v. Catawba Med. Ctr.*, No. 1:23-cv-00018, 2023 WL 1871106, at *4 (W.D.N.C. Feb. 9, 2023) (dismissed the plaintiff's Title III ADA claims on a 28 U.S.C. § 1915 review because "[t]he ADA does not…provide for a claim based on disagreements with medical providers or even for inadequate care that was not discriminatory.")

Further, this Court finds that Plaintiff lacks standing to assert claims under the ADA. Under Title III, Robert has failed to sufficiently allege a past injury relating to Brandon's

12

accessibility to the property or any difficulties with Brandon's accessibility to the property due to his disability. As stated previously, Plaintiffs claims are grounded in the alleged inadequate care Queens Nassau is providing to his son. R. Doc. 1 at 3-6. However, there are no allegations that his son Brandon is being discriminated against because of his disability or that Queens Nassau failed to deny or enjoy the services available because of his disability.

Under Title IV, Plaintiff also has not asserted any basis for standing under Title IV of the ADA. Plaintiff asserts that Brandon was denied a communications device to speak with his family and friends but does not demonstrate how this allegation falls within Title IV. R. Doc. 1 at 6. Moreover, Title IV is enforced by the Federal Communications Commission. Therefore, to assert a claim under Title IV, a complaint should be filed with the Commission.

Having determined that the Court lacks federal question jurisdiction and Plaintiff lacks standing to bring the lawsuit, the Court will consider the applicability of the *Younger* Abstention Doctrine regarding the pending state court proceedings.

### B. <u>Younger Abstention</u>

Robert next contends that there is a conflict between two state court judgments. R. Doc. 20. First, he alleges that the New York Court has disregarded the Louisiana Court's Judgment of Interdiction determination, which acknowledges him as guardian of his son Brandon and asserts continuing jurisdiction over the matter. R. Doc. 5, 8-9, R. Doc. 16-1. Although Robert still resides in New York, he filed this suit in the Eastern District of Louisiana, a court in the state where the original judgment of interdiction was issued. R. Doc. 1 at 1. He suggests that both states should honor the guardianship proceedings of the other jurisdiction under the Uniform Adult Guardianship and Protective Proceedings Act. R. Doc. 20 at 7-8.

Queens Nassau counters that this lawsuit is an attempt at forum shopping and at worst, a repetitive and frivolous use of the Court's time. R. Doc. 33-1 at 6. Queens Nassau contends that the Supreme Court's Appellate Division of New York recognized that Robert had not properly registered his Letters of Curatorship in New York and therefore has no legal effect in the state. *Id.* Queens Nassau also contends that his son Brandon Dickerson is and has been a resident of the State of New York.[4] *Id.* Therefore, Queens Nassau explains that this lawsuit is a request to have this Court adjudicate a purely state law matter where two states disagree with each other on the interpretation of their respective laws, which is the heart of the *Younger Abstention Doctrine. Id.*

The first consideration is the distinction between a "facial attack" and a "factual attack" upon the complaint under Fed. R. Civ. P. 12(b)(1). If the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. *See Paterson v. Weiberger,* 644 F.2d 521, 523 (5th Cir. 1981). If those jurisdictional allegations are sufficient, the complaint stands. On the other hand, if a defendant makes a "factual attack" upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. *Id.* In the latter case, a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction. *Id.*

Additionally, a motion to dismiss grounded on *the Younger* Abstention Doctrine is more appropriately adjudicated under Rule 12(b)(1) rather than Rule 12(b)(6). This is because such a dismissal plainly is one that is not on the merits, while a dismissal under Rule 12(b)(6) is a

---

[4] Queens Nassau further contends that this Court has no controlling jurisdiction over the Eastern District of New York, who too has recognized that Robert Dickerson has no custodial rights over Brandon Dickerson in New York. R. Doc. 33-1 at 7. *See Dickerson v. Dickerson,* No. 23-cv-3859, 2023 WL 3931696 (E.D.N.Y. June 9, 2023); *Dickerson v. Siegal,* No. 23-cv-3859, 2023 WL 6158833, at *2 (S.D.N.Y. Sept. 21, 2023).

dismissal generally on the merits. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 916 (6th Cir. 1986) ("Normally, Rule 12(b)(6) judgments are dismissals on the merits and Rule 12(b)(1) dismissals are not."); *Wilkins v. Jakeway*, 183 F.3d 528, 533 (6th Cir. 1999) ("Despite what the court said about deciding the matter as a decision on the merits under 12(b)(6), what the court did was to effectively decline to reach the merits of Plaintiff's claims as to the individual Defendants.").

The *Younger* abstention doctrine was initially a federal court's relinquishment of jurisdiction, when necessary, not to interfere with a parallel, pending state criminal proceedings. *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention has subsequently been expanded to apply in two additional scenarios. First, *Younger* has been expanded to encompass a federal court's relinquishment of jurisdiction when necessary not to interfere with particular state civil enforcement proceedings. *See Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 70, 134 S .Ct. 584, 187 L.Ed. 2d 505 (2013). Second, the Supreme Court expanded *Younger* to require abstention from interfering with state civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

After a court has found that a case falls into one of these categories, the court potentially invoking *Younger* considers whether (1) there is an ongoing state judicial proceeding (2) that implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Where these prerequisites are satisfied, a federal court can only assert jurisdiction if "certain narrowly delimited exceptions to the abstention doctrine apply." *Bice v. Louisiana Pub. Def. Bd.,* 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004)).

*Younger* principles are not invoked by the mere fact that federal relief has an impact upon state governmental machinery, even in its quasi-criminal extensions. Its dismissal is called for only where the successful defense of a state enforcement proceeding, initiated before substantial federal proceedings on the merits had occurred, would fully vindicate the federal plaintiff's federal right. *See Younger at* 41; *Steffe v. Thompson,* 415 U.S. 452 (1974); *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973); *Huffman v. Pursue*, 420 U.S.592 (1974).

For example, "a federal court may refuse to abstain and grant the requested equitable relief…[when] the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff[.]" *All American Check Cashing, Inc. v. Corley,* 191 F.Supp.3d 646, 655 (S.D. Miss. Mar. 22, 2016) (Lee, T.) "In order to decide whether the federal proceeding would interfere with the state proceeding, we look to the relief requested and the effect it would have on the state proceedings." *Bice,* 677 F.3d at 717 (quotation omitted). Under Fifth Circuit jurisprudence, interference is established were "the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Id.* (quotation omitted).

In this case, the pleadings show that regarding Dickerson, state guardianship proceedings were filed in New York and in Louisiana. They remain continuing and ongoing.

The record shows an order issued by the Louisiana Court on June 1, 2023, in which the court denied his son sister's Geneva request to transfer the proceeding to New York and held that it had exclusive and continuing jurisdiction over this matter. R. Doc. 16-1. By contrast, the New York Court issued an order on December 11, 2024, finding that the Louisiana Court's judgment of interdiction was not properly registered in New York. R. Doc. 33-9. Therefore, the Court found that the New York Court had subject matter jurisdiction over this matter. *Id.*

Under these circumstances, Robert's request for this Court to order Brandon's release from the Queens Nassau facility would interfere with the Louisiana Court and New York Court's pending guardianship orders. *See Bice,* 677 F.3d at 712. Therefore, the first requirement for the *Younger* Abstention doctrine is met.

Additionally, both Louisiana and New York have a strong interest in adjudicating questions of guardianship. See e.g. *Dickerson v. Siegal,* No. 23-3859, 2023 WL 6158833, at *2 (S.D.N.Y. Sept. 21, 2023) (Komitee, E.) (finding that adjudicating questions of guardianship was an important state interest, and citing supporting jurisprudence from the Second Circuit, which governs New York). *See Shipula v. Texas Dept. of Family Protective Services,* No. 10-3688, 2011 WL 1882521, at *9 (S.D. Tex. May 17, 2011) (Harmon, M.) (noting that "family relations…are important state interests"). Therefore, the second requirement for the *Younger* Abstention doctrine is also met.

Finally, federal jurisprudence provides that the Court "should assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Thomas v. State,* 294 F.Supp.3d 576, 594 (N.D. Tex. Feb. 13, 2018) (Ramirez, M.J.) (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15 (1987)). In this case, Robert has not identified any barrier precluding him from raising his claims in an appropriate state appellate court. Further, Fifth Circuit jurisprudence provides that the plaintiff must establish "actual proof of bad faith" for the bad faith exception to the *Younger* Abstention Doctrine to apply. See *Gates v. Strain*, 885 F.3d 874, 881 (5th Cir. 2018) (citation omitted).

In this case, Robert requests that the Court intervene in the New York guardianship proceedings. According to his pleadings, he requests that the Court force Queens Nassau to release Brandon pursuant to his authority as a Curator appointed by the Louisiana Court. Brandon,

17

however, has been in New York receiving medical treatment since May 20, 2022, and both Robert and Geneva are New York residents. R. Doc. 16-1 at 4. Geneva also alleged that she had filed a parallel New York guardianship proceeding because she learned that Robert was causing harm to Brandon. *Id.* at 9-10.

Although the Court is sympathetic to Robert's concerns regarding Brandon's care, this dispute regarding Brandon's guardianship has already been raised in two ongoing state court proceedings, and Robert has not provided "actual proof of bad faith." Raising the same dispute in another court will not resolve the underlying state court proceedings.

Moreover, Robert has already filed suit against Queens Nassau in the Eastern District of New York on May 24, 2023, requesting that the court intervene in the ongoing state guardianship proceedings. *See* R. Doc. 33-10. The Court ultimately dismissed Robert's suit on September 21, 2023, and held that Robert's request to enjoin the state court proceedings was barred by the *Younger* Abstention Doctrine. *Id.* Now, two years after his claims against Queens Nassau were dismissed by another federal court under the *Younger* Abstention Doctrine, Robert has filed suit in this Court seeking to compel Queens Nassau and the New York Court to recognize his position as Brandon's Curator.

This Court finds that Robert's claims remain barred by the *Younger* Abstention Doctrine. The Court additionally finds that the state court proceedings provided the plaintiff with an adequate opportunity to his guardianship claims. Further, the Court *sue sponte* finds that there is no original jurisdiction in this case because Dickerson's basis for his lawsuit is in state court, and there is no federal question raised in the pleadings. Lastly, all of the parties to the matter reside in New York and not Louisiana. Therefore, Robert's suit should be dismissed as barred under the *Younger* Abstention Doctrine.

IV.     **Recommendation**

Accordingly,

**IT IS RECOMMENDED** that Defendant's **Motion to Dismiss (R. Doc. 26 & R. Doc. 33)** be **GRANTED for the reasons assigned above.**

**IT IS FURTHER RECOMMENDED** that Plaintiff Robert L. Dickerson's claims against Defendant Queens Nassau Nursing Home Inc. be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction under the *Younger* Abstention Doctrine.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 21st day of October 2025.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.